UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.    1:18 CR 38 |
| | ) | 1:21 CV 1118 |
| Plaintiff-Respondent, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| JAMES D. BUTLER, | ) | ORDER |
| | ) | |
| Defendant-Petitioner. | ) | |

This matter comes before the Court upon James D. Butler's ("Petitioner's")
Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (ECF No.
80.) The government filed a Response in Opposition and Petitioner filed a Reply. (ECF
Nos. 84, 85.) This matter is now fully briefed and ready for disposition. For the reasons
set forth herein, the petition (ECF No. 80.) is DENIED.

**I.**

On August 24, 2017, Mr. Butler entered a gun store in Mansfield, Ohio. While an
employee, Kenneth Hockensmith, had his back turned, Mr. Butler stole a handgun from
the counter. Because the store staff were moving inventory in preparation for a gun
show, they did not immediately realize the gun was missing. Several days later, Mr.
Hockensmith and the store owner, Wallace Toward, determined the gun was gone.

Mr. Toward and Mr. Hockensmith reviewed the store's video surveillance
footage, which showed Mr. Butler steal the weapon from the counter, place it in his
waistband, and leave. The store operators contacted Mansfield Police, and Officer Joe
Gladden responded. Officer Gladden watched the video, recognized Mr. Butler, and

obtained still photos of the video footage. The still photos showed Mr. Butler in the store but did not show Mr. Butler with the weapon. Officer Gladden wrote a report naming Mr. Butler as a suspect. Officer Gladden tried to obtain a copy of the video footage, but Mr. Hockensmith was unfamiliar with copying the video. Several days later, the video footage was inadvertently overwritten.

Mr. Butler was stopped by another Mansfield Police officer, Sergeant Nathan Kilgore, for unrelated reasons. During this interaction, Sergeant Kilgore offered Mr. Butler the opportunity to speak with Officer Gladden about the gun theft. Mr. Butler opted to speak with Officer Gladden by phone, but agreed to do so in a police vehicle, so that onlookers would not perceive that he was cooperating with authorities. Sergeant Kilgore reiterated to Mr. Butler that he was not under arrest. In his phone conversation with Officer Gladden, Mr. Butler denied stealing the gun but told Officer Gladden that he could get the gun with more time. On Officer Gladden's recommendation, Sergeant Kilgore arrested Mr. Butler for the theft of the firearm.

This Court issued a warrant for Mr. Butler's arrest, which was executed by Special Agent John Sabol of the Bureau of Alcohol, Tobacco, Firearms & Explosives. (ECF No. 5.) Thereafter, a grand jury indicted Mr. Butler on one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 12.) Special Agent John Laurito of the ATF completed a report identifying the weapon's interstate nexus.

Prior to trial, Mr. Butler's counsel, Charles Fleming, became concerned that Mr. Butler could be mentally incompetent to understand the nature of the proceedings or assist in his defense. Mr. Fleming moved this Court for a continuance and a mental competency evaluation. (ECF No. 25.) Shortly thereafter, Mr. Fleming informed this

2

Court that Mr. Butler did not want to undergo a competency hearing and instead wanted new counsel appointed to represent him. Prompted by Mr. Fleming's concerns, the government independently moved this Court for a continuance and competency hearing. (ECF No. 30.) This Court granted that motion and Mr. Butler's request for new counsel.

Almost two months later and one week prior to trial, Mr. Butler's new counsel, Fernando Mack, moved this Court for a continuance. (ECF No. 39.) This motion did not represent that a continuance would allow the defense to produce otherwise unavailable witnesses or defenses. The motion was denied. Prior to trial, this Court found Mr. Butler competent.

Mr. Hockensmith, Mr. Toward, Officer Gladden, and Special Agent Laurito testified to the above facts at trial. Each of them testified that they viewed Mr. Butler steal the weapon on the surveillance film (except Laurito, who did not view the film).

The jury found Mr. Butler guilty of one count of Felon in Possession of a Firearm. Mr. Butler was sentenced to one hundred eighty months in prison. On direct appeal, the U.S. Court of Appeals for the Sixth Circuit affirmed Mr. Butler's conviction. Mr. Butler's request to the Supreme Court for a writ of certiorari was denied.

Petitioner first claims that he is entitled to relief based on ineffective assistance of counsel. Petitioner argues that his trial attorneys were ineffective because they failed to 1) conduct a pretrial investigation regarding the missing video footage; 2) cross exam witnesses on various topics, including racial animus, the delay in reporting the missing weapon, and law enforcement investigative methods; 3) oppose trial continuances; 4) raise several defenses; and 5) object to statements made in the government's closing argument. These claims were not addressed on direct appeal.

3

Petitioner also claims that he is entitled to relief because 1) insufficient evidence supported his conviction; 2) the trial court erred by violating his rights to a speedy trial and a fair and impartial trial; and 3) the government knew or should have known that its witnesses gave false testimony. These claims were not addressed on direct appeal, which Petitioner attributes to ineffective assistance of appellate counsel.

In addition to addressing Petitioner's arguments, the government claims that Petitioner's motion is time barred.

## II.

A petitioner who moves to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 must show that 1) "the sentence was imposed in violation of the Constitution or laws of the United States"; 2) "the court was without jurisdiction to impose such sentence"; 3) "the sentence was in excess of the maximum authorized by law"; or 4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A "§ 2255 motion is not a substitute for a direct appeal." *Ray v. U.S.*, 721 F.3d 758, 761 (6th Cir. 2013) (internal quotations omitted). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows" 1) "cause and actual prejudice to excuse his failure to raise the claims previously" or 2) "that he is 'actually innocent' of the crime." *Id.* (quoting *Bousley v. U.S.*, 523 U.S. 614, 622 (1998)). Mr. Butler has not presented new evidence proving his actual evidence, so his procedurally defaulted claims can only be considered after a showing of cause and actual prejudice.

However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. U.S.*, 538 U.S. 500, 504 (2003). To succeed on a

claim of ineffective assistance, a petitioner must show that 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 669, 688, 695 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To show ineffective assistance, a petitioner must "overcome the presumption" that "the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted).

For claims not premised on ineffective assistance of trial counsel, a petitioner may show cause for the failure to raise the issue on direct appeal through a claim of ineffective assistance of appellate counsel. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). To succeed on such a claim, a petitioner must satisfy the two-part ineffective assistance test in *Strickland. Id.* However, ineffective assistance of appellate counsel only provides cause; as with any claim (except ineffective assistance of trial counsel), a petitioner must still show actual prejudice to excuse his failure to bring the issue on direct appeal. *Willis*, 351 F.3d at 746.

### III.

The government first argues that Petitioner's claim is time-barred. 28 U.S.C. § 2255 provides that "[a] 1 year period of limitation shall apply" to a motion for post-conviction relief under 28 U.S.C. § 2225. 28 U.S.C. § 2255(f). The limitation period runs from the latest of 1) the date on which the judgment of conviction becomes final; 2) the date on which any illegal or unconstitutional impediment to making a motion is removed; 3) the date on which a relevant and retroactively applicable right is newly

5

recognized by the Supreme Court; or 4) the date on which the facts supporting the claim could have been exercised through the exercise of due diligence. 28 U.S.C. § 225(f).

Petitioner's request to the Supreme Court for a writ of certiorari was denied on May 26, 2020, which is the date on which the judgment of Petitioner's conviction became final. *U.S. v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). The limitations period therefore expired on May 26, 2021, which is the anniversary of the denial of the writ of certiorari. *Downs v. McNeil*, 520 F.3d 1311, 1317–18 (11th Cir. 2008) (collecting cases).

The government contends that Petitioner's motion was filed on June 2, 2021 and is thus time-barred. But "[a] paper filed by an inmate . . . is timely if deposited in the institution's internal mailing system on or before the last day for filing." Rules Governing § 2255 Proceedings 3(d). To benefit from the rule, an inmate must "set forth the date of deposit" and make a "declaration in compliance with 28 U.S.C. § 1746." *Id.* Petitioner affirmatively declared, under oath and in compliance with § 1746, that he delivered the filing to prison officials on May 21, 2021. (ECF No. 80, PageID.652.) This certification creates a rebuttable assumption that the inmate delivered the filing to prison authorities on the date indicated. *Marchbanks v. United States*, 2019 WL 7372701, at *1 (6th Cir. July 19, 2019) (applying § 2255 Rule 3(d)). The government has not presented any mailroom logs or affidavits of prison officials to dispute that Petitioner delivered the motion to prison officials on May 21, 2021. Moreover, certified mail tracking records indicate that the United States Postal Service was in possession of the filing by 8:30am on May 27, 2021, which further supports Petitioner's assertion that the filing was delivered to prison officials on May 26, 2021. Petitioner's motion will, therefore, be considered timely.

6

Alternatively, Petitioner asserts that the limitation period is unconstitutional. Petitioner also argues that the limitation period should be tolled because prison officials confiscated his legal files for several months. Since Petitioner's motion is deemed timely without aid of tolling, these arguments are not addressed.

## IV.

A.    Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel provided ineffective assistance. Petitioner also argues that his appellate counsel was ineffective in failing to raise his ineffective assistance of trial claim. (ECF No. 80, PageID.691–92.) However, this second level of abstraction is unnecessary, as claims of ineffective assistance of trial counsel may be addressed for the first time on a § 2255 motion without showing cause and prejudice. Thus, Petitioner's ineffective assistance claims with be addressed on the merits.

1.    Pretrial Investigation

Petitioner claims that his attorneys were deficient in failing to conduct a pretrial investigation into the missing surveillance footage. Petitioner argues that his counsel should have hired a private investigator or expert technician to determine why the video was lost and if the video could potentially be recovered. (ECF No. 80, PageID.669.)

Petitioner fails to show that hiring a private investigator was an objectively reasonable decision. In fact, opting not to attempt to recover the video footage may have been a strategic decision—it is entirely possible that the video footage, if recovered, would have further demonstrated Mr. Butler's guilt. Petitioner also fails to demonstrate a reasonable probability that the outcome of the case would be different had his counsel attempted to recover the video. Petitioner has not made a showing that the video could have been likely recovered. Petitioner has also not shown a reasonably probability that

the video would have exonerated him; all the witnesses that viewed the video testified that it depicted Mr. Butler stealing the weapon. Petitioner's counsel was not ineffective in failing to hire an expert to examine the store's hard drive.

### 2.    Cross Examination

Petitioner claims that his attorneys were deficient in failing to cross examine witnesses on several topics.

#### a.    Witness Backgrounds

Petitioner argues that his attorneys should have asked Mr. Toward and Mr. Hockensmith on cross examination whether they had "ever been accused of lying," "suffered from some type of mental health issues," or were "possible closet racist[s]." (ECF No. 80, PageID.673–74.) Similarly, Petitioner claims that law enforcement witnesses should have been cross examined about their motives and background. For example, Petitioner argues that Officer Gladden should have been asked about his "disciplinary record" and "his racial bias." (ECF No. 80, PageID.675.)

Petitioner fails to show a reasonable probability that this questioning would have changed the outcome of his trial. Petitioner has not adduced any evidence showing that the witnesses harbored racial biases, suffered from mental illnesses, or had negative disciplinary histories—much less that such evidence would have led the jury to disregard the testimony. This Court cannot conclude that blind questioning would have been likely to change the outcome at trial. Petitioner also fails to show it would have been objectively reasonable for his attorney to engage in these lines of questioning. Here, there is an obvious strategic explanation: Asking witnesses about their racial bias, mental health, or disciplinary history—without any known derogatory evidence—presents those witnesses with an opportunity to *enhance* their credibility.

8

b.    Store Operators' Version of Events

Petitioner also argues that his counsel should have cross examined Mr. Hockensmith and Mr. Toward regarding their respective versions of events. Petitioner claims that his counsel failed to ask Mr. Hockensmith "how it was even possible for a six-foot, eight inch tall black male able [sic] to snatch a weapon out of its box in plain sight with the witness just right on the opposite side of the store counter." (ECF No. 80, PageID.674.) Similarly, Petitioner critiques his counsel's decision not to ask why Mr. Hockensmith and Mr. Toward waited to report the gun stolen. (ECF No. 80, PageID.673, 665, 667.) Petitioner also claims his attorney should have questioned Mr. Toward about his expertise with video surveillance and the circumstances of the video being deleted. (ECF No. 80, PageID.667, 673.) Finally, Petitioner argues that his counsel should have attempted to impeach Mr. Hockensmith's testimony based on his poor eyesight. (ECF No. 80, PageID.65.)

Each of these topics were fully addressed during witness testimony. On direct examination, Mr. Hockensmith was asked the exact question that the Petitioner proposes: "How was it that you say this Defendant was able to take that gun off the counter without you noticing?" (Tr., ECF No. 74, PageID.461.) Mr. Hockensmith explained that he was on his knees behind the counter with his back turned, unable to see Mr. Butler. Mr. Hockensmith also explained, including on cross examination, that he and Mr. Toward did not report the gun stolen immediately after noticing it missing from the inventory because they could not be confident that the gun was missing until they unpacked the inventory at the gun show that weekend. (Tr., ECF No. 74, PageID.452–52, 469.) Mr. Toward explained that the video footage was accidentally written over. (Tr., ECF No. 74, PageID.526–28.) And Petitioner's counsel did question

9

Mr. Hockensmith about his eyesight, which was normal during the events at issue. (Tr., ECF No. 74, PageID.469–70.) Petitioner essentially critiques his counsel for not belaboring issues already addressed in prior testimony.

Petitioner has not shown, to a reasonable probability, that the outcome of the trial would have be different if his attorneys engaged in this redundant questioning—the jury was already apprised of these facts. Furthermore, Petitioner has not shown that an objectively reasonable attorney would ask these questions. Rather, it is quite likely that Petitioner's counsel made a strategic decision not to give Mr. Hockensmith and Mr. Toward additional opportunities to restate their version of events and implicate Mr. Butler.

c.  <u>Investigative Methods</u>

Petitioner argues that local authorities should have been questioned concerning their decision not to dust the counter and gun box for fingerprints. (ECF No. 80, PageID.675.) Petitioner also criticizes his counsel for failing to press authorities on their decision to leave the video footage in Mr. Toward's custody. (ECF No. 80, PageID.675.) Finally, Petitioner argues that Special Agent Laurito should have been questioned regarding his decision not to conduct an independent investigation. (ECF No. 80, PageID.675–76.)

Petitioner's counsel did ask Officer Gladden about fingerprint testing, albeit of the gun itself. (Tr., ECF No. 74, PageID.501.) On redirect, Officer Gladden explained why authorities did not seek physical evidence, such as fingerprints or DNA testing. Officer Gladden testified that he did not "need DNA to tell [him] that [he] watched [Mr. Butler] take that gun." (Tr. ECF No. 74, PageID.511.) Defense counsel also cross-examined Officer Gladden regarding the video footage. Officer Gladden testified that he

10

attempted to get a copy of the video footage but was unable. (Tr., ECF No. 74, PageID.506.) Still, Officer Gladden personally viewed the footage, obtained still photos, and anticipated getting a full copy of the video.

Petitioner essentially criticizes his attorneys for failing to engage in redundant questioning. Petitioner cannot show that repeated cross examination concerning investigative techniques, including Special Agent Laurito's independent investigation, would have changed the result at trial. The jury convicted Mr. Butler based on the evidence presented. Repeatedly pointing to evidence that did *not* exist would not have been reasonably likely to change the jury's perception of the evidence that *did* exist. Petitioner also cannot show that an objectively reasonable attorney would have engaged in these lines of questioning. In fact, Officer Gladden's redirect testimony on the issue of physical evidence demonstrates why a defense attorney might strategically choose not to present law enforcement witnesses with an opportunity to defend their tactics.

Petitioner also argues that his attorney should have questioned Special Agent Laurito regarding "the legality of an unauthorize [sic] civilian being allowed to conduct a federal investigation," because "the ATF agency did not grant such authority, let alone make a federal arrest." (ECF No. 80, PageID.676.) Cross examining Special Agent Laurito would not have been objectively reasonable or changed the result of the trial because Special Agent Laurito's opinion on the legality of Petitioner's arrest is irrelevant and likely would have been inadmissible. Further, his counsel was not ineffective in failing to challenge Petitioner's arrest. Mr. Butler's factual account is simply incorrect. Mr. Butler's arrest on these charges *was* made by a federal officer, pursuant to a federal warrant.

3.    Trial Continuances

Petitioner claims that his counsel was ineffective in seeking "excessive trial continuances," mainly for the purpose of requesting a hearing on Mr. Butler's competency. (ECF No. 80, PageID.680–81.)

Petitioner has not shown that Mr. Fleming's decision to seek a continuance and competency hearing was objectively unreasonable. When a defense attorney has a "good faith doubt as to the defendant's competence," he "is not only allowed to raise the competency issue" over the defendant's objection but "has a professional duty to do so." *U.S. v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998), *cited with approval in U.S. v. Jackson*, 179 Fed.Appx. 921, 933 (6th Cir. 2006).

Second, Petitioner has not shown a reasonable probability that the outcome at trial would have been different if Mr. Fleming did not seek a continuance. Petitioner claims that his counsel sought the continuance "[a]s a means to attempt to coerce [Mr. Butler] to plead guilty." (ECF No. 80, PageID.681.) But Petitioner did not plead guilty, so there is no indication that the continuance affected the outcome. Petitioner argues that Mr. Fleming should have sought a continuance to investigate the case, rather than seek a competency hearing. (ECF No. 80, PageID.681.) In other words, Petitioner's ultimate criticism is not with his attorney's decision to delay trial but rather with his attorney's performance during the delay—an issue which has already been addressed.

4.    Affirmative Defenses

Petitioner claims that his counsel was ineffective in failing to present several affirmative defenses, namely 1) "mere presence defense"; 2) alternative suspect defense; and 3) police fabrication defense. (ECF No. 80, PageID.683.)

12

Although Petitioner describes the mere presence argument as an affirmative defense, his own authority describes the argument in terms of evidentiary sufficiency. *U.S. v. Arnold*, 486 F.3d 177, 180–83 (6th Cir. 2007). "'Presence *alone* near a gun, true enough, does not show the requisite knowledge, power, or intention to exercise control over the gun" to prove possession. *Id.* at 183 (internal quotations omitted) (emphasis in original). But the government can prove possession through "other incriminating evidence, coupled with presence," such as "eyewitness testimony connect[ing] the gun to the defendant." *Id.* at 183–84. This is exactly how the prosecution proved its case against Mr. Butler—by offering the testimony of witnesses who observed Mr. Butler steal the gun on video. The prosecution did not rely on Mr. Butler's presence in the gun store alone. Petitioner cannot show that his attorney was objectively unreasonable in choosing not to present an inapplicable defense, or that such a defense would have been reasonably likely to change the outcome of the case. Moreover, Petitioner's attorney *did* emphasize in his closing argument that the photographs only showed Mr. Butler's presence in the store and that the jury was free to disbelieve the witness accounts (Tr., ECF No. 75, PageID.607–08.)

Petitioner argues that his counsel should have presented an alternative suspect defense because the stolen gun was ultimately found on another person with no proven connection to Mr. Butler. But in his closing argument, Mr. Butler's attorney did just that, arguing that "it wasn't proven that [Mr. Butler] has a relationship with the folks that were finally arrested for that gun." (Tr., ECF No. 75, PageID.609.) Petitioner has not shown that his attorney's decision not to focus *more* on this argument was objectively unreasonable or that doing so would have been reasonably likely to change the outcome of the trial. This is because there is an obvious counterargument: The jury

13

could have easily found that Mr. Butler stole the gun and then sold it or otherwise handed it off.

Finally, Petitioner criticizes his counsel for not arguing that the police fabricated the evidence against Mr. Butler. A successful police fabrication defense in this case would have to prove not just that the police fabricated evidence, but also that the police conspired with two civilian store operators to give false testimony. There was absolutely no evidence to support such claims. Instead, defense counsel argued that the witnesses did not "have an axe to grind," but rather may have "jump[ed] to conclusions," "exaggerated," misperceived, or misremembered what they saw. (Tr., ECF No. 75, PageID.604.) This decision was not objectively unreasonable. Defense counsel likely made a strategic recognition that a jury is much more likely to believe that witnesses misjudged what they saw on video than that multiple police and civilians colluded to lie under oath. And given the lack of evidence, the presentation of a police fabrication defense would not have been reasonably likely to change the outcome at trial.

5.  Government's Closing Argument

Petitioner claims that his counsel was ineffective in failing to object to statements made by the government that improperly bolstered the credibility of its witnesses in closing arguments. (ECF No. 80, PageID.686.)

A prosecutor may not "comment on the credibility of a witness" or "express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). But this only means that a prosecutor may not express their "personal belief or opinion as to the credibility of a witness." *Id.* (internal quotations omitted). "To be certain, prosecutors can argue the record, highlight the inconsistencies or

inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* (quoting *U.S. v. Carroll*, 26 F.3d 1380, 1389 (6th Cir. 1994)).

Government counsel did not make any statement about his personal belief as to any witness's credibility, and he did not state that any witness was or was not credible. Government counsel merely applied the jury instructions on credibility to the facts in the record. For example, the prosecution reminded jurors that one factor for judging credibility is whether the witness had a relationship with the government or defendant that could create bias. Then, the prosecution explained that the record does not show that any witnesses had any such relationship or had "anything to gain or lose." (Tr., ECF No. 75, PageID.599.)  This is entirely permissible. Thus, defense counsel's lack of objection was not objectively unreasonable. Such an objection would have been futile.

B.    Trial Court Error

Petitioner argues that the Court erred by 1) granting a continuance and ordering a competency hearing; 2) not allowing new defense counsel enough time to prepare for trial; and 3) allegedly suggesting, to defense counsel, prior to trial, that Petitioner was guilty. (ECF No. 80, PageID.648.)  Petitioner argues that he could not raise these issues on direct appeal due to ineffective assistance of appellate counsel. (ECF No. 80, PageID.649.) Accordingly, he must show not only cause (in the form of ineffective assistance), but also actual prejudice. *Willis*, 351 F.3d at 745–46.

Petitioner has not shown that he suffered actual prejudice from the Court's decision to grant a continuance and order a competency hearing. This is apparent because Mr. Butler also argues that the Court erred by *not* granting a continuance one week prior to trial. If a trial delay was so prejudicial to Mr. Butler as to warrant vacating his conviction, he would not simultaneously suggest that this Court should have further

delayed trial. Regardless, this claim fails on the merits. A trial court "must" grant a competency examination once a motion is made, "unless the motion is frivolous or is not made in good faith." *U.S. v. Jackson*, 179 Fed.Appx. 921, 933 (6th Cir. 2006). Given that prior defense counsel *and* the government raised concerns about defendant's competency, the Court had no grounds to find the motion frivolous or in bad faith. Because the claim fails on the merits, appellate counsel's decision not to bring this issue on appeal was objectively reasonable.

Petitioner has also not shown actual prejudice from the Court's decision to not allow new defense counsel additional time to prepare for trial. "Actual prejudice requires proof that the continuance would have provided relevant witnesses or contributed to the defense." *U.S. v. Hall*, 200 F.3d 962, 964 (6th Cir. 2000). Neither Petitioner's current § 2255 motion nor his continuance motion contend that a continuance would have allowed Mr. Butler to present additional witnesses or defenses. Petitioner's trial was held nearly two months after Mr. Mack's appointment. The original continuance motion only pointed to the severe potential penalties that Mr. Butler faced; in fact, the motion noted that "the Court has demonstrated much patience in the handling of the case." (ECF No. 39, PageID.99.)

Finally, Petitioner alleges that the Court "told Mr. Fleming, it was the jurist['s] opinion [that] [Mr. Butler] was guilty of the charge, based on the photo." Petitioner has not identified when or where this comment was made, and such a comment is not reflected in the minutes or transcripts of any proceeding. Further, if made, such a comment did not actually prejudice Petitioner. The alleged comment was not made at trial, and Mr. Butler's guilt was adjudicated by the jury, not the Court. Even setting aside the issue of prejudice, judicial remarks generally only demonstrate "bias or partiality"

16

when they "reveal an opinion that derives from an extrajudicial source." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). The Court's supposed comment was based on the evidence— the photo of Mr. Butler—which is decidedly *not* extrajudicial. If appellate counsel had raised this issue, Petitioner has not shown a reasonable likelihood that the outcome on appeal would have been different.

C.     Insufficiency of the Evidence

Petitioner claims that the evidence to support his conviction was insufficient. (ECF No. 80, PageID.693.) Petitioner argues that he could not raise these issues on direct appeal due to ineffective assistance of appellate counsel. (ECF No. 80, PageID.649.) Accordingly, he must show not only cause (in the form of ineffective assistance), but also actual prejudice. *Willis*, 351 F.3d at 745–46.

Mr. Butler cannot show that his appellate counsel's decision not to bring an insufficiency challenge was unreasonable or that bringing such a challenge would have been reasonably likely to change the result on appeal. Such a challenge would have likely failed in the court of appeals. Mr. Butler's insufficiency argument returns to his earlier "mere presence" argument. Again, Petitioner misstates the evidence against him. The government's case did not rest on Mr. Butler's mere presence in the gun store. Instead, the government presented the testimony of three witnesses who saw Mr. Butler steal the weapon on video. In response, Petitioner argues that these witnesses accounts are countered by "exculpatory facts," such as the lack of physical evidence. But these facts, which were before the jury, speak only to the weight and credibility of the witnesses' accounts. When evaluating a claim of insufficient evidence, courts must take witnesses testimony at face value; courts are "not at liberty to reweigh the evidence or reassess the credibility of witnesses." *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020). Petitioner's

17

insufficiency claim would have likely failed on direct appeal, so his appellate counsel was not ineffective in failing to raise that issue.

D.    Prosecutorial Misconduct

Petitioner also claims that his conviction should be overturned because his appellate counsel failed to "look at the possibility that the government counsel knowingly allowed [government] witnesses to commit perjury." (ECF No. 80, PageID.690.) Accordingly, he must show not just cause (in the form of ineffective assistance), but also actual prejudice. *Willis*, 351 F.3d at 745–46.

To show prosecutorial misconduct, "[t]he burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Brooks v. Tennessee*, 626 F.3d 878, 894–95 (6th Cir. 2010). Petitioner has not shown that any government witnesses made any false statements. Thus, it is not reasonably likely that his conviction would have been reversed had his appellate counsel "look[ed] at the possibility" of misconduct. For that reason, his appellate counsel was not ineffective, and Mr. Butler has not suffered actual prejudice.

**V.**

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in Petitioner's motion. Section 2253 provides, in part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>> (a) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>> (b) the final order in a proceeding under section 2255.

18

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

To make a "substantial showing" of the denial of a constitutional right, as required under § 2255(c)(2), a petitioner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

When a district court has rejected the constitutional claim on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability.

## VI.

For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 80) is DENIED. Because the files and records in this case conclusively show that Petitioner is entitled to no relief under § 2255, no evidentiary hearing is required to resolve the pending motion. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which

19

to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b). IT IS SO

ORDERED.


DONALD C. NUGENT
Senior United States District Judge

DATE: November 15, 2021